Jeffrey McDANIEL, Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, as Successor Corporation to Aetna, the Standard Fire Insurance Company, Defendant.

Civil Action No. 3:99–CV–43.

United States District Court,
N.D. West Virginia,
Martinburg Division.

Nov. 21, 2000.

See also 503 S.E.2d 840.

D. Michael Burke, Burke & Schultz, Martinsburg, WV, for plaintiff.

Edward A. Smallwood, Dickie, McCamey & Chilcote, Pittsburgh, PA, Avrum Levicoff, Brown & Levicoff, PC, Pittsburgh, PA, for defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

BROADWATER, District Judge.

The above styled matter is now before the Court on the defendant's motion for summary judgment.[1] For the following reasons, the Court hereby **GRANTS** the defendant's motion for summary judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

On December 13, 1991, a motor vehicle accident occurred in Berkeley County, West Virginia in which Jeffery McDaniel's ("McDaniel") automobile collided with an automobile operated by Irene Adair Kleiss ("Kleiss"). McDaniel then filed a lawsuit against Kleiss seeking damages for bodily injuries he sustained in the accident. At the time of the accident, Kleiss had liability insurance coverage in the amount of $100,000.00 through an automobile insurance policy issued by USAA Insurance Company ("USAA"). In addition, McDaniel had $100,000.00 in underinsured motorist coverage under a policy of automobile insurance issued by Aetna, The Standard Fire Insurance Company ("Standard Fire"). In accordance with West Virginia Code § 33–6–31(d), McDaniel initiated service on Standard Fire of the Summons and Complaint in the tort action against Kleiss. This signified the pursuit of a claim for the underinsured motorist coverage of McDaniel's insurance policy with Standard Fire.

Prior to the trial of the tort action against Kleiss, Standard Fire, under the belief that there would be a jury verdict in excess of $200,000.00, offered to settle McDaniel's underinsured motorist claim by the payment of the sum of $100,000.00, the full limits of the coverage. The advance payment was offered in exchange for a Release in which McDaniel subordinated his right to proceed against Kleiss's assets for any judgment in excess of $200,000.00 to Standard Fire.

Following trial, the jury found McDaniel contributorily negligent with respect to the accident. The jury apportioned McDaniel's fault at 40 % and returned a verdict in his favor in the amount of $154,823.42. However, the trial judge reduced the verdict by 40 %, and McDaniel was awarded a total of $99,974.24.

Standard Fire then issued a letter to McDaniel's lawyer expressing its position that McDaniel had an obligation to protect its subrogation rights against Kleiss by making sure the verdict was vacated and a proper one entered. On post trial motions, the Circuit Court of Berkeley County increased the jury award based on the finding that the jury had improperly reduced the damage award based on McDaniel's comparative fault. Kleiss appealed this ruling to the West Virginia Supreme Court of Appeals, which reversed and reinstated the original verdict. *See McDaniel v. Kleiss*, 480 S.E.2d 170 (W.Va.1996).

Meanwhile, USAA, acting on behalf of Kleiss, obtained the trial court's permission to deposit the $100,000.00 proceeds of Kleiss's liability insurance coverage in the registry of the circuit court. Standard Fire sought leave to intervene and participate in the proceedings related to the disposition of the $100,000.00 deposited by USAA. A dispute arose between McDaniel and Standard Fire over which of them was entitled to the deposited funds. Both parties moved to receive distribution of the funds. By order entered January 14, 1997, the circuit court ordered that Standard Fire receive the distribution of the original jury verdict in the amount of $99,974.24, with interest. This was the

---

**1.** Doc. # 37.

amount reinstated by the West Virginia Supreme Court of Appeals. McDaniel appealed the circuit court's ruling.

On appeal, the West Virginia Supreme Court of Appeals reversed the circuit court. The Supreme Court held that under the language of the Release, signed by both parties, Standard Fire had no right to receive the distribution of the funds paid by USAA into the court, unless the judgment was in excess of $200,000.00. Because the judgment was less than $200,-000.00, the Supreme Court found that Standard Fire was not entitled to the funds. *See McDaniel v. Kleiss*, 202 W.Va. 272, 503 S.E.2d 840 (1998). On remand, the circuit court ordered Standard Fire to pay $111,698.666 into the court's registry for distribution to McDaniel.

In April of 1999, McDaniel instituted the current action in the Circuit Court of Berkeley County. Standard Fire removed the action to this Court pursuant to 28 U.S.C. § 1441. Standard Fire now moves this Court for summary judgment on the basis that there is no genuine issue of material fact and, therefore, it is entitled to judgment as a matter of law.

## II. STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

However, the party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. *See also Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979) (holding that "summary judgment 'should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (quoting *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950))).

In *Celotex,* the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265. Summary judgment is not appropriate until after the nonmoving party has had sufficient opportunity for discovery. *See Oksanen v. Page Memorial Hosp.,* 912 F.2d 73, 78 (4th Cir.1990), *superseded on rehearing,* 945 F.2d 696 (4th Cir.1991). Additionally, "[o]n summary judgment the inferences to be drawn form the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## III. DISCUSSION OF LAW

██ This is a unique case in that there is no West Virginia authority on point. Additionally, this is not the typical first party or third party insurance claim. This is not a dispute arising out of the perfor-

mance of the insurance contract between McDaniel and Standard Fire. Nor is this a dispute arising out of the proceeds due to the insured under the insurance contract. In this case, McDaniel was paid the full amount of his underinsured motorist coverage before his trial against the tortfeasor and before an underinsured event had occurred. In fact, an underinsured event never occurred and, under the terms of his insurance contract, McDaniel was not entitled to recover from Standard Fire. Instead of being a typical insurance case arising from an alleged breach of the insurance policy, this case arises out of a dispute over a bargained-for, arm's length exchange, where each party was represented by legal counsel. The resulting agreement, the Release, is the contract at the center of McDaniel's claims.

After the negotiation of the bargained-for Release, unforeseen events occurred. The jury returned a verdict in favor of McDaniel but found him 40 % at fault. Therefore, he received a verdict of approximately $99,000.00. The Release directly addressed the rights and obligations of the parties if the jury returned a verdict in excess of $200,000.00 but did not address the contingency that the verdict would be less. Thus, Standard Fire filed a motion asserting its interpretation of the Release agreement in conjunction with the insurance policy, that it was entitled to the judgment award because there was no underinsured event. The circuit court agreed with Standard Fire, but the West Virginia Supreme Court of Appeals reversed. The Supreme Court held that the Release was a separate contract from the insurance policy and that, under the Release, McDaniel was entitled to any award less than $200,000.00. *See McDaniel v. Kleiss,* 202 W.Va. 272, 503 S.E.2d 840, 846 (1998).

■ In light of the West Virginia Supreme Court of Appeals' ruling that the Release and the insurance policy are two separate contracts, the plaintiff bases his

claim for breach of contract on the terms of the Release. However, the plaintiff fails to establish what part of the release has been breached by the defendant. In a breach of contract action, the plaintiff must make out a complete contract and allege a breach of that contract. *See Rhoades v. Chesapeake & O.R. Co.,* 49 W.Va. 494, 39 S.E. 209, 211 (1901). The defendant's obligation under the Release was to pay the plaintiff $100,000.00, which it did. The defendant subsequently disagreed with the plaintiff about the interpretation of the contract upon an unforseen event, a recovery of less than $200,000.00. This dispute has already been resolved by the West Virginia Supreme Court of Appeals, and there is nothing for this Court to do under this cause of action.

The plaintiff argues that the defendant's breach occurred by its efforts to abrogate the Release. The record before this Court shows that Standard Fire believed that it had a legal right to the proceeds of the Kleiss judgment. Further, the Circuit Court of Berkeley County agreed.

■ A justiciable controversy exists for purposes of a declaratory judgment when a legal right is claimed by one party and denied by another. *See West Virginia Utility Contractors Assoc., etc., et al. v. Laidley Field Athletic and Recreational Center Governing Board et al.,* 164 W.Va. 127, 260 S.E.2d 847, syl. pt. 3 (W.Va.1979). Here, Standard Fire claimed that it had a legal right to the proceeds of the award. McDaniel's counsel denied that it did. Therefore, Standard Fire was entitled to seek a declaratory judgment as to its rights to the verdict award, and this action cannot constitute a breach of contract claim. Standard Fire is entitled to judgment as a matter of law as to Count I of the Complaint.[2]

■ The second count in the complaint is for a breach of the implied duty of good faith and fair dealing. The implied duty of

---

2. Count I is the breach of contract claim.

good faith and fair dealing that arises from an insurance contract does not apply in this case. Here, there was a bargained-for, arm's length transaction with each party represented by legal counsel. Therefore, the typical implied covenants and duties of the insurer to the insured do not apply.[3]

Even if the typical duties of good faith and fair dealing did apply to this case, the record fails to establish a breach of those duties. All the record shows is that the defendant petitioned the Circuit Court of Berkeley County to adopt its interpretation of the Release. This does not on its face rise to a cause of action. While there is no West Virginia authority directly on point, a West Virginia circuit court did rely on the Montana Supreme Court's decision in *Palmer by Diacon v. Farmers Insurance Exchange*, 261 Mont. 91, 861 P.2d 895 (Mont.1993) to hold that an insurance company's actions after litigation is instituted cannot be properly introduced as bad faith. *See State ex rel. Federal Kemper Ins. Co. v. Zakaib*, 203 W.Va. 95, 506 S.E.2d 350, 352 n. 3 (1998) (this issue was not before the Supreme Court on review and, thus, was not addressed). The Montana Supreme Court held that " '[t]here is no need to penalize insurers when their attorney's represent them zealously within the bounds of litigation conduct.' " *Id.* at 352 n. 3 (quoting *Palmer by Diacon*, 861 P.2d at 914). The Supreme Court further stated that to allow a jury to find that an insurer acted in bad faith by zealously defending itself would impose precisely that type of penalty on the insurer. *See id.* at 352 n. 3. (quoting *Palmer by Diacon*, 861 P.2d at 914).

The plaintiff has presented no evidence, other than the fact that the defendant sought court review to enforce its interpretation of the Release, that would support a cause of action for a breach of the implied duty of good faith and fair dealing. Thus,

the defendant is entitled to judgment as a matter of law as to Count II.

The remaining count is for the "willful, intentional and malicious interference with receipt of judgment award." There is no case law in West Virginia, or any jurisdiction, that recognizes this cause of action. A federal court sitting with diversity jurisdiction must apply state law as it presently exists and may not "suggest or surmise its expansion." *See Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir.1999); *see also Ball et al., v. Joy Manufacturing Co., et al*, 755 F.Supp. 1344, 1374 (S.D.W.Va.1990). McDaniel has also failed to present evidence that would suggest that Standard Fire acted with the required culpability to sustain this cause of action. Therefore, summary judgment in favor of the defendant is appropriate for this count.

The Court, therefore, **ORDERS**

1. That summary judgment be **GRANTED** in favor of the defendant against the plaintiff as to Counts I, II, and III.

2. That there being nothing further to consider, this matter be **DISMISSED** and struck from the active docket of this Court.

The Clerk is directed to transmit true copies of this Order to all counsel of record herein.

---

3. West Virginia has never recognized a cause of action for breach of an implied duty of good faith arising out of an arm's length, bargained-for agreement negotiated between counsel.